Michael Rato
**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962
(973) 993-8100

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORTHEASTERN LUMBER<br>MANUFACTURERS ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>SKY OF NEW YORK CORPORATION, and<br>TONG-IN INTERNATIONAL USA INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)   Case No: _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR TRADEMARK INFRINGEMENT,
## COUNTERFEITING, AND BREACH OF CONTRACT

Plaintiff Northeastern Lumber Manufacturers Association ("NeLMA"), by and through undersigned counsel, hereby complains as follows against Defendants Sky of New York Corporation ("Sky of NY") and Tong-IN International USA, Inc. ("Tong-IN") (Sky of NY and Tong-IN, collectively, "Defendants"):

1. This is an action for trademark infringement and counterfeiting under the Lanham Act, 15 U.S.C. §1051 *et seq.* and 15 U.S.C. § 1114, breach of contract, and unfair competition, passing off, false advertising and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a), arising from Defendants' unauthorized use of NeLMA's trademarks and Defendants'

1

false and misleading claims of compliance with an international wood packaging materials inspection program administered by NeLMA.

## PARTIES

2.      NeLMA is a Delaware corporation with its principal place of business at 272 Tuttle Road, Cumberland, Maine.  NeLMA is a trade association under Section 501(c)(6) of the Internal Revenue Code and is a certifying agency for lumber, timber, and wood packaging materials inspection under the aegis of the American Lumber Standards Committee ("ALSC").

3.      Upon information and belief, Sky of NY is a New Jersey corporation with a principal place of business in Clifton, New Jersey.  Sky of NY is engaged in the business of international freight forwarding and the production of wooden packaging materials including pallets, skids, crates, boxes, and custom packaging for use in shipping goods.

4.      Upon information and belief, Tong-IN is a New Jersey corporation with a principal place of business in Clifton, New Jersey.  Tong-IN is, or at one time was, engaged in the business of international freight forwarding and the production of wooden packaging materials including pallets, skids, crates, boxes, and custom packaging for use in shipping goods.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a) and (b).  This Court also has supplemental jurisdiction over NeLMA's state law claims pursuant to 28 U.S.C. § 1367.

## FACTS
### The NeLMA Trademarks

6.      NeLMA is the owner of common law trademarks, as well as United States Trademark registrations thereof, and the goodwill symbolized by the trademarks and the registrations thereof including:

   a.  NeLMA Logo:  Registration No. 2731831, registered July 1, 2003 (the "NeLMA Logo"); and

   b.  NeLMA Mark:  Registration No. 3061638, registered February 28, 2006 (the "NeLMA Mark").

  7.  Attached hereto as **Exhibit A** are true and correct copies of the trademark registrations for the NeLMA Mark and the NeLMA Logo.

  8.  The NeLMA Mark and the NeLMA Logo are registered on the principal register of the U.S. Patent and Trademark Office (the "USPTO").

  9.  The NeLMA Logo Registration No. 2731831 is  incontestable, which provides conclusive evidence of the validity of that registration, NeLMA's ownership of that mark, and NeLMA's exclusive right to use that mark in commerce in connection with the goods and services specified in the certificate of registration under 15 U.S.C. § 1115(b).

  10.  The NeLMA Mark and NeLMA Logo, as well as variants thereof, have been extensively and continually advertised and promoted by NeLMA within the United States and throughout the world with respect to a system for demonstrating compliance with the international inspection program known as the Wood Packaging Materials Inspection Program, as well as with programs having to do with the compliance of softwood lumber with grades and standards approved by the American Lumber Standard Committee ("ALSC").

  11.  NeLMA has expended substantial amounts of time, effort, and money to ensure that the general public associates the NeLMA Mark and NeLMA Logo exclusively with NeLMA and its mission of certifying product standards for the benefit of the public and the wood products industry.

12.     NeLMA has been using the NeLMA Mark and NeLMA Logo in connection with the certification of wood packaging material and the grading and certification of lumber and timber in interstate commerce since 2002 or earlier.

13.     Upon information and belief, Defendants did not use the NeLMA Mark or the NeLMA Logo as trademarks in commerce prior to 2010.

### NeLMA's Wood Packaging Materials Inspection Program

14.     NeLMA offers certification and inspection services to facilities that produce wood packaging materials (such as boxes, crates, skids, and pallets) used to export goods to the numerous countries that have implemented international standards for wood packaging.

15.     The International Standard for Phytosanitary Measures ("ISPM") – Guidelines for Regulating Wood Packaging Material in International Trade, Publication Number 15 is the official name of the international standard for wood packaging, otherwise known as ISPM 15, developed under the International Plant Protection Convention ("IPPC").

16.     The IPPC ISPM 15 standard was developed as a means to reduce the phytosanitary concerns related to global trade and the significant spread of pests through wood packaging materials.

17.     The IPPC ISPM 15 standard prescribes two types of treatments for wood packaging materials: (a) heat treatment, and (b) fumigation with methyl bromide.

18.     To meet the requirements of ISPM 15, a wood packaging facility must ensure that all solid wood components of wood packaging materials have been treated either by heat treatment or application of methyl bromide.

19.     NeLMA's Wood Packaging Materials Inspection Program certifies compliance with the heat-treatment alternative.

20.     If a facility decides to use the heat-treatment alternative, it must use lumber or components that have been heated by a certified heat treatment facility to a minimum of 56 degrees C (133 degrees F) for 30 minutes at the core of each piece, and each piece must be stamped with an "HT" mark and the logo of an ALSC-accredited agency, such as NeLMA.

21.     Once the lumber has been properly heat treated, a wood packaging facility may cut the "HT"-stamped lumber for use in manufacturing the finished wood packaging item. The finished pallet, skid, crate, or box is to be marked on a minimum of two opposite sides by the certified wood packaging facility's "IPPC" stamp that includes the International IPPC logo, the facility's certifier number, and the certifying agency's logo. This signifies to the customs agents in export countries that the wood packaging meets IPPC's ISPM 15 Standard, and is part of the United States' verification program.

22.     NeLMA inspects and certifies both heat treatment facilities and wood packaging facilities.

23.     NeLMA has been vigilant in protecting its interests in the NeLMA Mark and the NeLMA Logo, and has consistently acted against misuse of the foregoing marks by unauthorized third parties.

24.     By virtue of the worldwide recognition and use of the NeLMA Mark and the NeLMA Logo, and through NeLMA's vigilance in policing the use of its protected marks, the NeLMA Mark and the NeLMA Logo have acquired an extraordinary degree of consumer recognition in the minds of the relevant public.  Through widespread and favorable public acceptance and recognition, the NeLMA Mark and the NeLMA Logo enjoy significant goodwill and have become assets of great value as symbols identifying NeLMA's services and inspection programs and the integrity thereof.

### Tong-IN's Use Of The NeLMA Mark

25.     On or about May 13, 2010, Tong-IN applied to NeLMA to become certified as a wood packaging facility pursuant to NeLMA's wood packaging materials inspection program.

26.     On or about May 13, 2010, Tong-IN and NeLMA entered into an Agreement to Provide Service to a Wood Packaging Manufacturing Facility (the "Agreement"), pursuant to which NeLMA agreed to certify Tong-IN's compliance with the IPPC ISPM 15 standards, and to authorize Tong-IN to use the NeLMA Mark in connection with Tong-IN's wood packaging and freight forwarding business.

27.     A true and correct copy of the Agreement is attached hereto as **Exhibit B**.

28.     Tong-IN was issued two certification stamps bearing the NeLMA Mark and the facility identifier 091156, to be used in stamping finished wood packaging materials.

29.     Pursuant to the Agreement, Tong-IN agreed *inter alia* to permit the stamps bearing the NeLMA Mark "to be applied only to wood packaging products which conform[] in every respect to the provisions of the applicable IPPC standard," and "to be used only at the Facility [i.e., Tong-IN] for which the quality mark was assigned by the Agency [i.e., NeLMA]."

30.     It is critical that certification stamps be used only by and at the facility to which they were issued, as NeLMA must be able to inspect the facility and ensure compliance with applicable IPPC standards.

31.     The Agreement permitted NeLMA to terminate the Agreement for a variety of reasons, including but not limited to non-payment of charges, non-compliance with the terms of the Agreement, or use of the certification stamps in an unauthorized manner.

32.     The Agreement also permitted either party to terminate by written notice to the other party.

33.     The Agreement automatically terminated upon the liquidation or sale of Tong-IN.

34.     Pursuant to the Agreement, Tong-IN acknowledged that "all quality marks issued to the Facility will remain the property of the Agency," and agreed that such marks "will be promptly returned to the Agency upon any termination of this agreement."

35.     The Agreement provided that the "Agency shall be entitled to recover from the Facility any and all costs of enforcing this Agreement, including attorney's [fees], paralegal fees, and court costs.

## Tong-IN's Breach Of The Agreement And Failure To Return The Stamps Bearing The NeLMA Mark

36.     Between 2010 and 2012, Tong-IN breached the Agreement in numerous material respects, including without limitation by failing to pay NeLMA charges when due, by failing to provide NeLMA adequate access to its facility to ensure compliance with the Agreement and the ISPM 15 standard, and by failing to comply with the ISPM 15 standard in multiple respects such as by using noncompliant and salvaged wood materials, by improperly stamping boxes, and by failing to provide documentation regarding lumber purchases.

37.     On March 6, 2012, a NeLMA inspector arrived at the Tong-IN facility for an inspection of the facility, and discovered that the facility was padlocked and all contents of the warehouse and office removed.  The name of another company was newly posted at the facility.

38.     Tong-IN had not notified NeLMA that it would be closing or relocating.

39.     NeLMA attempted to contact Tong-IN numerous times, and left messages instructing Tong-IN to return the NeLMA certification stamps bearing the NeLMA Mark to NeLMA.

40.     NeLMA also posted notices at the Tong-IN facility, again instructing Tong-IN to return the NeLMA certification stamps bearing the NeLMA Mark to NeLMA.

41.     Tong-In did not respond to any of NeLMA's attempts to contact it and did not return the certification stamps to NeLMA, in violation of the Agreement and NeLMA's trademark rights.

42.     NeLMA terminated its licensing arrangement with Tong-IN in 2012.  At all times since 2012, Tong-IN has not been authorized or certified to use the NeLMA Mark or the NeLMA Logo in connection with its business or for any other purpose.

## Sky Of NY's Unauthorized Use Of The NeLMA Marks

43.     On December 7, 2016, while inspecting the facility of another NeLMA licensee, a NeLMA inspector discovered two newly constructed boxes that had been stamped with a NeLMA certification stamp bearing the NeLMA Mark and the Tong-IN identifier number.

44.     The impression left by the stamp was identical in all respects to the NeLMA certification stamps provided to Tong-IN.

45.     The boxes bore a label identifying the shipper as Sky of NY, and listed an address in Clifton, New Jersey, the same town as the Tong-IN facility.

46.     The boxes had been shipped from South Korea; Tong-IN shipped freight predominantly to and from South Korea.

47.     NeLMA's licensee produced a shipping document that confirmed that Sky of NY was the name of the freight forwarder on the shipment.

48.     NeLMA's inspector requested that its licensee contact Sky of NY to confirm that Sky of NY had made the boxes and applied the stamp containing the NeLMA Mark.

49.     Sky of NY confirmed to NeLMA's licensee that it had made and stamped the boxes.

50.     On December 13, 2016, a NeLMA inspector traveled to the Sky of NY facility with a NeLMA licensee, and personally witnessed Sky of NY employees utilizing the NeLMA certification stamps bearing the Tong-IN identifier number and the NeLMA Mark to stamp wooden packaging materials.

51.     Sky of NY is not authorized, and has never been authorized, to utilize the NeLMA Mark or certification stamps bearing NeLMA's name or trademarks.

52.     Tong-IN is not currently authorized, and has not been authorized since at least 2012, to utilize the NeLMA Mark or certification stamps bearing NeLMA's name or trademarks.

53.     Neither Sky of NY nor Tong-IN are inspected by NeLMA to ensure compliance with the IPPC ISPM 15 standard.  By applying the NeLMA certification stamps with the NeLMA Mark to wooden packaging materials used in their business, Sky of NY and/or Tong-IN are misrepresenting to the relevant public and government officials that they have been certified by an authorized agency as complying with IPPC ISPM 15 standard.

## FIRST CAUSE OF ACTION
### Federal Trademark Infringement and Counterfeiting

54.     NeLMA repeats and realleges the allegations contained in all previous paragraphs as if set forth in full herein.

55.     Defendants have purposefully used the NeLMA Mark and certification stamps bearing the NeLMA Mark in commerce without the authorization or consent of NeLMA.

56.     Defendants' use of the certification stamps bearing the NeLMA Mark in the production, sale, and export of wooded packaging materials has caused and will continue to cause actual confusion or mistake and to deceive members of the relevant public and government officials into believing that NeLMA has authorized Defendants to use the NeLMA Mark, and that NeLMA has certified Defendants as complying with the IPPC ISPM 15 standard.

9

57.     Sky of NY acquired the certification stamps bearing the NeLMA Mark without permission or license by NeLMA, and without being subject to inspection by NeLMA, with the specific intent to create an impression among members of the public and government officials that the material to which the stamp and associated marks was affixed had been subject to inspection under NeLMA's Wood Packaging Materials Inspection Program, which it had not been.

58.     In using the certification stamps and the NeLMA Mark in their wooden packaging and freight-forwarding business, Defendants seek to trade off the good will and worldwide recognition of NeLMA's Wood Packaging Materials Inspection Program without right, license, or authority to do so.

59.     Defendants' actions constitute infringement of NeLMA's trademark(s) in violation of section 32(a) of the Lanham Act, 15 U.S.C. § 1114, and constitute counterfeiting in violation of the Lanham Act, 15 U.S.C. § 1114, *et seq.*, and 15 U.S.C. § 1116(d).

60.     The foregoing acts of infringement were deliberate, willful and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

61.     As a proximate result of Defendants' willful actions, NeLMA has suffered and will continue to suffer significant damage to its business, goodwill, reputation, profits and the strength of its trademarks. The injury to NeLMA is and continues to be ongoing and irreparable. An award of monetary damages alone cannot fully compensate NeLMA for its injuries and NeLMA lacks an adequate remedy at law.

62.     NeLMA is entitled to preliminary and permanent injunction against Defendants, as well as all other remedies available under the Lanham Act, including, but not limited to,

compensatory damages, treble damages, disgorgement of profits, pre- and post-judgment interest, and costs and attorney's fees.

## SECOND CAUSE OF ACTION
### Breach of Contract

63.    NeLMA repeats and realleges the allegations contained in all previous paragraphs as if set forth in full herein.

64.    NeLMA entered into a contract with Tong-IN, as set forth above.

65.    Tong-IN breached its contract with NeLMA by acting as described above, including without limitation by failing to pay NeLMA charges when due, and by failing to return the NeLMA certification stamps upon termination of the Agreement.

66.    Tong-IN's breach of contract has caused significant damages to NeLMA, including monetary damages, loss of goodwill and damage to its reputation and mission.

67.    As a result of Tong-IN's breach of contract, NeLMA is entitled to compensatory damages as well as preliminary and permanent injunctive relief, pre- and post-judgment interest, and costs and attorney's fees.

## THIRD CAUSE OF ACTION
### Federal Unfair Competition, False Designation of Origin, Passing Off and False Advertising

68.    NeLMA repeats and realleges the allegations contained in all previous paragraphs as if set forth in full herein.

69.    The NeLMA Mark and the NeLMA Logo, as used by NeLMA and its licensees in connection with Wood Packaging Materials Inspection Program, are distinctive and famous marks and have become associated with NeLMA in the minds of the relevant public.

70.    The NeLMA Mark and the NeLMA Logo exclusively identify NeLMA in connection with its certification programs and other activities.

11

71.     By using the NeLMA certification stamps and the reproductions of the NeLMA Mark created thereby, Defendants are falsely claiming participation in the Wood Packaging Materials Inspection Program, and have misrepresented and falsely designated the origin of their goods and have passed off their goods as those of or approved by NeLMA, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and, in addition to the above or alternatively, have caused the public and government officials to believe that the NeLMA Mark and the NeLMA Logo are generic, thus destroying the goodwill and value NeLMA has built with the NeLMA Mark and NeLMA Logo.

72.     In addition, Defendants' activities have diluted the distinctiveness and value of the NeLMA Mark and NeLMA Logo, in violation of applicable law.

73.     The foregoing acts have been and continue to be deliberate, willful and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

74.     Defendants' acts, as set forth above, have caused irreparable injury to NeLMA's goodwill and reputation. The injury to NeLMA is and continues to be ongoing and irreparable. An award of monetary damages alone cannot fully compensate NeLMA for its injuries and NeLMA lacks an adequate remedy at law.

75.     NeLMA is entitled to a preliminary and permanent injunction against Defendants, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorney's fees.

### FOURTH CAUSE OF ACTION
### Unfair Trade Practices Under New Jersey Statutory And Common Law

76.     NeLMA repeats and realleges the allegations contained in all previous paragraphs as if set forth in full herein.

77.    The aforementioned collective acts of the Defendants constitute unfair and deceptive business practices contrary to the laws of New Jersey, including but not limited to N.J. Rev. Stat. § 56:8-2 *et seq.* (the "Unfair Trade Practices Act") and the common laws of New Jersey.

78.    Defendants' unfair and deceptive business practices were committed willfully, knowingly, and maliciously, and have caused substantial injury to NeLMA.

79.    Defendants' unfair and deceptive business practices will continue if not preliminarily and permanently enjoined by the Court, thereby continuing to deceive the public and government officials and causing NeLMA immediate and irreparable harm, damage, and injury.

80.    NeLMA is entitled to a permanent injunction against Defendants, as well as other remedies available under the Unfair Trade Practices Act and the common laws of New Jersey, including, but not limited to, compensatory damages, treble damages, punitive damages, pre- and post-judgment interest, and costs and attorney's fees.

## FIFTH CAUSE OF ACTION
### Violation Of New Jersey Trademark Act And Common Law

81.    NeLMA repeats and realleges the allegations contained in all previous paragraphs as if set forth in full herein.

82.    The aforementioned collective acts of the Defendants constitute a violation of the New Jersey Trademark Act, including but not limited to N.J. Rev. Stat. § 56:3-13.16 (the "NJ Trademark Act") as well as the common laws of New Jersey.

83.    Defendants' violation of the NJ Trademark Act has been and continues to be willful and knowing, and has caused substantial damage to NeLMA.

84.     NeLMA is entitled to a permanent injunction against Defendants, as well as other remedies available under the NJ Trademark Act and the common laws of New Jersey, including, but not limited to, compensatory damages, statutory damages, treble damages, punitive damages, pre- and post-judgment interest, and costs and attorney's fees.

WHEREFORE, NeLMA prays for judgment against Defendants as follows:

(1)     that Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with Defendants who receive actual notice of the Court's order by personal service or otherwise, be permanently enjoined from:

a.      using the NeLMA Mark or the NeLMA Logo or any confusingly similar mark, specifically including, but not limited to, any term that includes "NeLMA" or a misspelling of NeLMA in connection with the promotion, marketing, advertising, public relations and/or operation of Defendants' business;

b.      diluting, blurring, passing off or falsely designating the origin of the NeLMA Mark or the NeLMA Logo, and from injuring NeLMA's goodwill and reputation;

c.      doing any other act or thing likely to induce the belief that Defendants' businesses, services or products are in any way connected with, sponsored, affiliated, licensed, certified, or endorsed by NeLMA;

d.      using the NeLMA Mark or the NeLMA Logo or any confusingly similar mark for goods or services, or on the internet, or as domain

names, email addresses, meta tags, invisible data, or otherwise engaging in acts or conduct that would cause confusion as to the source, sponsorship or affiliation of Defendants with NeLMA;

(2) that Defendants, in accordance with 15 U.S.C. § 1116(a), be directed to file with this court and serve upon NeLMA within thirty days after service of the permanent injunction a report in writing under oath, setting forth in detail the manner and form in which Defendants' have complied with the permanent injunction;

(3) that pursuant to 15 U.S.C. § 1116(d)(1)(A), all Counterfeit Marks and all goods or documents or other things bearing such marks be seized, together with the means of making such marks and records documenting the manufacturer, sale, or receipt of things involved in such violation;

(4) that pursuant to 15 U.S.C. § 1118, all labels, signs, prints, packages wrappers, receptacles, and advertisements in the possession of Defendants, bearing counterfeit NeLMA Marks or NeLMA Logos, be delivered up and destroyed;

(5) that NeLMA recover its actual damages sustained as a result of Defendants' wrongful actions;

(6) that NeLMA recover Defendants' profits made as a result of Defendants' wrongful actions;

(7) that NeLMA further recover three times Defendants' profits made as a result of Defendants' wrongful actions or three times NeLMA's damages, whichever is greater;

15

(8)    that this case be deemed an exceptional case under 15 U.S.C. §§ 1117(a) and (b), and that Defendants be deemed liable for and ordered to reimburse NeLMA for its reasonable attorney's fees;

(9)    that NeLMA be awarded exemplary damages for Defendants' willful and intentional acts;

(10)    that NeLMA recover its costs of court; and

(11)    that NeLMA recover such further relief to which it may be entitled.

Dated: December 23, 2016
      Morristown, New Jersey

McELROY, DEUTSCH, MULVANEY
& CARPENTER, LLP

By: _____
    Michael Rato
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962
(973) 993-8100

*Attorneys for Plaintiff*

# Exhibit A

Exhibit A

| Northeastern Lumber Manufacturers' Association | NELMA | United States of America | 26 May 2004 | 76594007 | Registered | |  |
| | 460 | 28 Feb 2016 | 28 Feb 2006 | 3061638 | Registered | James Keenan | |
| **Class Goods** | Class A: LUMBER | | | | | | |

| Northeastern Lumber Manufacturers' Association | NELMA logo | United States of America | 12 Aug 2002 | 76440214 | Registered | |  |
| | 515 | 1 Jul 2013 | 1 Jul 2003 | 2731831 | Registered | James Keenan | |
| **Class Goods** | Class A: LUMBER | | | | | | |

Exhibit B

*$1150*   RECEIVED

MAY 26 2010

# The NELMA
## Heat Treatment (HT) and Wood Packaging Materials (WPM)
### Certification Program Application

**Company Name:** Tong-In Int'l USA

**Mailing Address:** 13-B Division St, Fairview   NJ   07022
Street or P.O. Box     City     State     Zip

**Billing Address:** 13-B Division St, Fairview   NJ   07022
Street or P.O. Box     City     State     Zip

**Physical Address:** 13-B Division St, Fairview   NJ   07022
Street     City     State     Zip

**Business Phone:** 201-840-1121   **Fax:** 201-840-1181

**Business Hours (Day & Time Specific):** 8:00 am ~ 6:00 pm

**Primary Contact:** Michelle   **Title:** Assistant Manager
**Email:** Tong.In@hotmail.com

**Other Key Personnel:** _____   **Title:** _____
**Email:** _____

_____   **Title:** _____
**Email:** _____

**Business Website:** _____

---

**Certification Type Requested:** (Check all that apply to your operation; obtaining multiple certifications at a facility does not increase the inspection fees due for service.)

[X] **Wood Packaging Facility.** This is a facility that produces finished pallets, skids, crates, or custom packaging either for sale or for their own company's use in exporting goods.

[ ] **Heat Treatment Facility.** This is a facility that has a chamber or kiln designed to (a) heat treat solid wood materials to be used in the construction of wood packaging for export, such as lumber, timbers, or components, and/or (b) to heat treat finished wood packaging such as pallets, skids, and crates.

[ ] **Re-Manufacturer of Heat Treated Materials.** This is a facility that purchases heat treated (HT-stamped) lumber and re-manufacturers the material into components FOR RESALE to another wood packaging facility.

| This company is currently certified by an ALSC-accredited inspection agency? ___ Yes [X] No |
| This company is not currently certified, but has been certified by an agency in the past? ___ Yes [X] No |
| This company has never been certified by an ALSC-accredited inspection agency? ___ Yes [X] No |

*I hereby apply for inspection services of the Northeastern Lumber Manufacturers Association. Upon acceptance, I shall abide by all terms of inspection required by the Association to maintain certification in the program.*

**Signature:** _____   **Date:** 5-13-10



### Return to:
**Northeastern Lumber Manufacturers Association**
P.O. Box 87A, Cumberland, ME 04021
Phone: (207) 829-6901   Fax: (207) 829-4293

rev. 6/09



# NELMA®

## The Northeastern Lumber Manufacturers Association

## AGREEMENT TO PROVIDE SERVICE
## TO A WOOD PACKAGING MANUFACTURING FACILITY

THIS AGREEMENT entered into this __13__ day of __May__, 20_10_ between the NORTHEASTERN LUMBER MANUFACTURERS ASSOCIATION ("NELMA"), hereinafter called the "Agency" and a Wood Packaging Facility, hereinafter called "Facility", with operations under the following company name and location:

NAME _Tong-In International USA_ LOCATION _13-B Division St. Fairview, NJ 07022._

### Witnesseth:

WHEREAS, the Agency is authorized by the American Lumber Standard Committee ("ALSC") to provide service to wood packaging facilities under procedures developed or enforced by ALSC or the Board of Review and including the requirements of International Plant Protection Convention ("IPPC") *Guidelines For Regulating Wood Packaging Material in International Trade*, and

WHEREAS, ALSC requires a written agreement or licensing arrangement approved by the Board of Review with each Facility that quality marks under its supervision, setting forth the conditions that shall be met by the Facility in order to be entitled to use the Agency quality mark.

NOW, THEREFORE, it is agreed between the parties as follows:

**THE AGENCY AGREES:**

1. To conform to all of the requirements as set forth in the ALSC Wood Packaging Materials Enforcement Regulations.

2. To maintain a bona fide supervisory service under which each participating facility shall be inspected at least twelve times each year at approximately monthly intervals, and thoroughly check the performance of the facility authorized to quality mark with the Agency symbol.

3. To have inspections conducted only by properly supervised and qualified inspectors, none of who shall be engaged in any undertaking which might conflict with his/her independent position as an inspector.

4. To maintain sufficient supervision of its inspection staff to assure not only the continuing competency of its members but consistency on their part in the uniform application of the IPPC standard.

5. To provide the Facility with a written report on each inspection showing the complete information necessary to determine conformance to all applicable specifications and requirements, quantity of each item checked, whether quality marked, when checked, and where checked.  A copy of each report will be sent to the Facility and maintained by the Agency for a period of five years.

6. To maintain a register of participating Facilities and supply this list to the Board of Review of ALSC, with updates as necessary.

7. To conduct services designed to protect the integrity of the quality mark and assure their acceptance by the customer of wood packing materials for use in exporting goods.

**THE FACILITY AGREES:**

1. To abide by the provisions of this agreement, ALSC by-laws and requirements and interpretations thereof.

2. To permit the official quality mark to be applied only to wood packaging products which conforms in every respect to the provisions of the applicable IPPC standard.  No special agreements between buyer and seller shall justify any deviation from the requirement.

3. To require that each wood packaging product produced under the provisions of the applicable IPPC standard shall be stamped only by Facility personnel specifically authorized by the Agency.

4. To permit the Agency quality mark to be used only at the Facility for which the quality mark was assigned by the Agency.

5. To maintain complete records of (a) lumber purchased for the production of wood packaging products under the requirements of IPPC guidelines and (b) corresponding quantity of finished products produced from the purchased lumber.  These records will be utilized in the Agency's inspection procedures and should be maintained for a period of three years.

6. To permit the Agency to inspect monthly, or more often at the discretion of the Agency, any of the Facility's wood packaging products during reasonable working hours and will cooperate with the Agency by providing labor to handle products to be inspected and otherwise to facilitate the inspection.

7. To cooperate fully when reinspection of incorrectly labeled products is required and take such steps as necessary to eliminate or

minimize the recurrence of such improper labeling.

8. To authorize representatives of the ALSC Board of Review the continuing right to examine any accredited agency grade stamped or quality marked wood or wood packaging material at the point where the Agency official quality mark is being used, and to spot check any products bearing the Facility's quality mark wherever such products are encountered.

9. To recognize that all quality marks issued to the Facility will remain the property of the Agency and will be promptly returned to the Agency upon any termination of this agreement.  The Facility acknowledges that no credit can be allowed for returned stamps.

10. To use only official quality mark stamps furnished by the Agency.  The Facility will not mutilate the stamps or permit their alteration in any way and will take reasonable measures to protect and safeguard the stamps against damage, theft or misuse.

11. The Facility will pay the cost of reinspection requested by it and will furnish the Agency with all pertinent information regarding the shipment in question in order to facilitate the reinspection.

12. To furnish all reports required by the Agency and pay such fees, charges or dues as are assessed by the Agency for inspection service.

13. The Agency may terminate this agreement for non-payment of charges or other violations of any of its terms by the Facility, including, but not limited to:

    a. Withdraws, is suspended, becomes ineligible, or ceases to be a member in good standing.

    b. Uses the grade stamps in an unauthorized manner.

    c. Fails or refuses to comply with any of the provisions of this Agreement, or any reasonable rules or regulations promulgated by the Agency. Suspension under this section shall be effective upon the date of mailing by the Agency of written notice to the Facility.  At which time, the Manager of the Board of Review of ALSC will be notified and no other inspection agency will be able to extend service to the Facility for a period of 180 days (in case of suspension or withdrawal) or 60 days (in case of warning), unless the Agency re-instates the Facility.

14. This Agreement shall automatically terminate on the liquidation of or sale of the undersigned Facility.

15. This Agreement may be terminated by either party by written notice to the other.

16. The Agency shall be entitled to recover from the Facility any and all costs of enforcing this Agreement, including attorney's, paralegal fees, and court costs.

17. This Agreement does not constitute the Facility or any of its personnel an agent of the Agency for any purpose.  The Facility is responsible for the proper use of the NELMA Quality Mark stamp and such use does not constitute a warranty or representation of any kind by the Agency. Accordingly, the Facility agrees to defend, indemnify and hold the Agency harmless from any and all claims of loss, damage, liability or expense to the Facility, his agents or employee, or to third persons arising out of or in any way connected with the production, use or sale by Facility or any lumber bearing the grademark or quality mark, or arising out of the Facility's failure to fulfill its obligations under this Agreement.

**IN WITNESS THEREOF, we have signed our names on the date written above.**

COMPANY: _TONG-IN  INTERNATIONAL USA_ NORTHEASTERN LUMBER

ADDRESS: _13-B Division St_     MANUFACTURERS ASSOCIATION

CITY, STATE, ZIP _Fairview, NJ 07022_

BUSINESS PHONE: _201-840-7727_

BUSINESS FAX: _201-840-1181_

BY: _[signature]_              BY: _[signature]_

(Authorized Facility Representative Signature)     (NELMA President Signature)

TITLE: _President_             Wood Packaging Facility # Issued: _1156_

                                                   (For NELMA Office use ONLY)

(1/10)



RECEIVED

MAY 26 2010

# Wood Packaging Materials Inspection Program
## Facility Registration

Date of Registration: **5-18-10**          Facility No.: **1156**

Facility Name: **TONG IND. INTRNL**

Mailing Address: **13-B DIVISION ST-FAIRVIEN, NJ 07022**

Street Address: **S/A**

Telephone No.: **201-840-7727** Fax No.: **201-840-7781**

The individuals designated below represent the authorized personnel of the facility responsible for overall compliance with the certification and inspection process of the Northeastern Lumber Manufacturers Association (NELMA) Wood Packaging Materials program. This includes the proper use of the quality mark issued by the Association and maintenance of accurate and current recordkeeping of all necessary documentations for verification.

### Primary Contact

**Richard   Park**
Name (Print)

**President.**
Title

### Authorized Facility Personnel

**Michell   Hong**
Name (Print)

_____
Title

_____
Name (Print)

_____
Title

_____
Name (Print)

_____
Title

_____
NELMA Inspector Signature

_____
Primary Contact Signature

**Northeastern Lumber Manufacturers Association**
P.O. Box 87A - Cumberland, ME  04021
Phone: 207-829-6901  Fax: 207-829-4293  email: info@nelma.org

# NELMA ®