NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NORTHEASTERN LUMBER
MANUFACTURERS ASSOCIATION,

*Plaintiff,*

v.

SKY OF NEW YORK CORPORATION, and
TONG-IN INTERNATIONAL USA INC.,

*Defendants.*

Civil Action No. 16-9487
(JMV) (JBC)
**OPINION**

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court on Plaintiff Northeastern Lumber Manufacturers Association's ("NeLMA" or "Plaintiff") unopposed motion for default judgment against Defendants Sky of New York Corporation ("Sky NY"), and Tong-IN International USA, Inc. ("Tong-IN") (collectively "Defendants"), under Federal Rule of Civil Procedure 55(b). D.E. 27. The Court reviewed all submissions made in support of the motion, and considered the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b).[1] For the reasons that follow, Plaintiff's motion is **GRANTED** as to Defendant Sky NY, and **DENIED** as to defendant Tong-IN.

---

[1] The Court held oral argument on Plaintiff's motion to hold Sky NY and its owner Jae C. Han in contempt February 6, 2018, during which the Court instructed Plaintiff's counsel to submit additional authority on the issue of damages as it pertained to their motion for default judgment.

## I. FACTS[2] AND PROCEDURAL HISTORY

NeLMA is a certifying agency for lumber, timber, and wood packaging. *See* Complaint, D.E. 1 (hereinafter "Complaint" or "Compl.") at 2. As part of their business, NeLMA owns trademarks that are registered with the United States Patent and Trademark Office, including the NeLMA logo and the NeLMA "mark." Ex. A to Compl. The marks connote "compliance with the international inspection program known as the Wood Packaging Materials Inspection Program," and other standards in the industry. Compl. at ¶10. NeLMA has been using the NeLMA Mark and Logo since 2002. *Id.* at ¶12. NeLMA inspects and certifies facilities that perform a heat treatment on wood that stops the spread of pests. *Id.* at ¶¶17-22. Once the wood has been treated, it is stamped with NeLMA's logo. *Id.* at ¶21.

In May 2010, Tong-IN applied for NeLMA's certification program and was sent two certification stamps from NeLMA, one which bore the NeLMA mark. *Id.* at ¶¶15, 28. Tong-IN subsequently breached the agreement and did not return the certification stamps. *Id.* at ¶¶36, 41. NeLMA alleges that the stamps are now being used by Defendant Sky NY. *Id.* at ¶¶43, 44.

Plaintiffs filed the Complaint on December 27, 2016, alleging federal trademark infringement and counterfeiting (Count I); breach of contract (Count II); federal unfair competition, false designation of origin, passing off and false advertising (Count III); unfair trade practices under New Jersey statutory and common law (Count IV); and violations of the New Jersey Trademark Act and common law (Count V). *Id.* at ¶¶54-84. That same day, the Court held an *ex parte* hearing to consider Plaintiff's request for an *ex parte* seizure order, temporary restraints, and a preliminary injunction. D.E. 11. The Court denied the *ex parte* seizure order, but

---

[2] The facts of this matter derive from the complaint as well as the affidavits and exhibits submitted in conjunction with Plaintiff's motion for default judgment. *See* D.E. 1, 27.

granted the motion for a temporary restraining order on December 29, 2016. D.E. 4, 7. The Court then granted Plaintiff a preliminary injunction on January 12, 2017.[3] D.E. 15. On January 24, 2017, Plaintiff requested an entry of default against Defendants, and the clerk entered the default that same day. D.E. 17. On March 8, 2017, counsel for Defendants, Jennifer Rhee, called Plaintiff's counsel to ask for more time to respond to the subpoena served on them in February 2017. See Declaration of Michael Rato, D.E. 27-3, (hereinafter "Rato Cert.") at ¶6 & Ex. C to Rato Cert. On April 24, 2017, after receiving no response, Plaintiffs filed a motion to compel compliance with that subpoena. Exs. A & B to Rato Cert. The Court ordered Defendants to comply with the subpoenas, but Defendants never did.

On September 14, 2017, Plaintiffs filed a motion to hold Defendants in contempt along with a motion for default judgment. D.E. 26, 27. On January 12, 2018, the Court denied the motion for default judgment without prejudice, "pending the outcome of the Order to Show Cause [] addressing the motion for contempt." D.E. 29. The Court also issued an Order to Show Cause instructing Sky NY and Jae C. Han to show cause why they should not be held in contempt and made to pay Plaintiff's costs in connection with the motion for contempt. D.E. 30. The Court held a hearing on February 6, 2018, the return date of the Order to Show Cause. D.E. 33. Plaintiff's counsel appeared, but neither Sky NY, Han, nor counsel for Defendants appeared. The Court issued an Order on February 6, 2018 granting Plaintiff's motion to hold Sky NY and Han in contempt, and ordered Defendants to pay $4,744.14 to Plaintiff, representing the reasonable attorneys' fees and costs incurred. D.E. 34, 35, 36. Plaintiff submitted a supplemental declaration on the damages for the default judgment on May 5, 2018. D.E. 38.

---

[3] Plaintiff has not asked for the preliminary injunction to be converted into a permanent injunction as part of the requested remedy in their default judgment motion.

## II. LAW AND ANALYSIS

   a. **Standard of Review**

"Once a party has defaulted, the consequence is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No.11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011) (quoting *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir.2005)). "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits, however, and [has] repeatedly state[d] [its] preference that cases be disposed of on the merits whenever practicable.'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir.1984)).

Prior to entering a default judgment, the court is required to: "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." *Moroccanoil, Inc. v. JMG Freight Grp. LLC*, No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015). Additionally, the Court must consider the following three factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *see also Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 522 (3d Cir. 2006).

### b. Jurisdiction and Service

"Before entering a default judgment as to a party 'that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 WL 273656, at *2 (D.N.J. Jan. 22, 2015) (quoting *Ramada Worldwide, Inc. v. Benton Harbor Hari Ohm, L.L.C.*, No. 08–3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008)).

### i. Subject Matter Jurisdiction

"Federal courts have subject matter jurisdiction over a case if it satisfies federal question jurisdiction under 28 U.S.C. § 1331, or diversity jurisdiction under 28 U.S.C. § 1332." *Hines v. Irvington Counseling Ctr.*, 933 F. Supp. 382, 387 (D.N.J. 1996). Pursuant to 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." "[A] claim arises under federal law if federal law creates the cause of action." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 706 (2006) (quoting *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986)). To establish diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), "the party asserting jurisdiction must show that there is complete diversity of citizenship among the parties" as well as an amount in controversy exceeding the statutory threshold. *Schneller ex rel Schneller v. Crozer Chester Med. Ctr.*, 387 Fed. App'x 289, 292 (3d Cir. 2010).

Plaintiffs bring this case under federal trademark statutes including the Lanham Act. Thus, the Court has subject matter jurisdiction over Counts I and III, and supplemental jurisdiction over the state-law claims, Counts III and V. *See* 28 U.S.C. §1367(d).

### ii. Personal Jurisdiction

The Court also has personal jurisdiction over Defendants. "With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760, 187 L. Ed. 2d 624 (2014) (internal quotation and citation omitted) (alteration in original). Defendant Sky NY is a New Jersey corporation that has its principal place of business in New Jersey. Compl. at ¶3. Defendant Tong-IN is also a New Jersey corporation with a principal place of business in New Jersey. Compl. at ¶4. Thus, the Court has personal jurisdiction over both Defendants.

### iii. Sufficiency of Proof of Service

"Before the Court can enter default judgment, it must find that process was properly served on the Defendant." *Teamsters Pension Fund of Philadelphia*, 2011 WL 4729023, at *2 (citing *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir.1985)). Fed. R. Civ. P. 4 governs service of process. Both Defendants are corporations, and may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B).

Defendant Sky NY was served on December 28, 2016 by a process server, who delivered a copy of the Complaint and attendant documents to an authorized service agent, Richard Park. D.E. 6. Counsel for Plaintiff served the Request for Entry of Default and the attendant documents on Sky NY via Federal Express on January 24, 2017. D.E. 17-6. Counsel for Plaintiff also served Jennifer Rhee, counsel for Sky of NY, and its owner, Jae C. Han, with copies of the motions for default judgment and contempt on September 14, 2017. D.E. 27-13.

It is clear that Plaintiff has properly served Defendant Sky NY, but it is not clear to the Court whether Tong-IN has been served with the Complaint or any later documents. Plaintiff does allege that they are one in the same, but given that service has only been made on Sky NY, the Court can only enter judgment as to Sky NY, not Tong-IN.

### c. Sufficiency of Causes of Action and Damages

In considering the sufficiency of the action, the Court must accept all well-pleaded factual allegations in the pleadings as true, except as to damages. *Chanel, Inc.*, 558 F. Supp. 2d at 535-36. The show a Lanham Act violation, plaintiff must show: (1) that "it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify foods and services causes a likelihood of confusion." *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000). The Court finds that Plaintiff owns a valid and legally protected mark, as evidenced by its registration with the United States Patent and Trademark Office. *See* Ex. A to Compl. They have also shown that given Defendants are using the exact same mark, in the way that the mark is intended to be used on non-approved lumber, and that there is a great likelihood of confusion if Defendants are permitted to continue using the mark. The Court finds that Plaintiffs have plausibly plead a violation of the Lanham Act.

### d. Default Judgment

"Before imposing the extreme sanction of default judgment, district courts must make explicit factual findings as to (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Teamsters Pension Fund of Phila.*, 2011 WL 4729023, at *4 (quoting *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008)).

Here, all three factors weigh in favor of entering default judgment. First, considering that Defendants have not responded in this matter, "Defendant[s] ha[ve] put forth no evidence or facts containing any information that could provide the basis for a meritorious defense." *HICA Educ. Loan Corp.*, 2015 WL 273656, at *3. Additionally, there is nothing on the face of the Complaint indicating that a meritorious defense is available. The second factor also weighs in Plaintiff's favor. The alleged misuse of their mark harms their business by diluting the mark's worth, and by damaging their reputation in the industry. Defendants have also exhibited culpability in this action, as they were seemingly aware of the matter and the subpoenas issued, but have refused to appear or respond. Without a default judgment, "Plaintiff has no other means of seeking damages for the harm allegedly caused by Defendant[s]." *Gowan v. Cont'l Airlines, Inc.*, No. 10-1858, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012). Lastly, Defendants' failure to answer, without providing any reasonable explanation, demonstrates their culpability in the default. *See Days Inns Worldwide, Inc. v. Mangur LLC*, No. 15-CV-2027, 2016 WL 845141, at *4 (D.N.J. Mar. 4, 2016). Here, "there is nothing before the Court to show that the Defendant[s'] failure to file an answer was not willfully negligent." *Teamsters Pension Fund of Philadelphia & Vicinity*, 2011 WL 4729023, at *1 (citing *Prudential Ins. Co. of America v. Taylor*, 2009 WL 536403 at *1 (D.N.J. February 27, 2009)).

For those reasons, the Court finds that default judgment is warranted.

### e. Remedies

While the factual allegations of the complaint "will be taken as true," the amount of damages must still be proven. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citation omitted). Plaintiff initially sought "actual damages," Defendants' profits, treble damages, attorneys' fees, exemplary damages, and costs. Now, Plaintiff requests statutory damages of

$1,500,000. Plaintiffs bases this number on the statutory damages scheme provided for in the Lanham Act, permitting an award of $2,000,000 per counterfeit mark if the counterfeiting was willful. 15 U.S.C. §1117(c).

### i. Statutory Damages

The Lanham Act provides that a plaintiff can elect to recover actual damages based on the defendant's profits and the plaintiff's damages (15 U.S.C. § 1117(a)) or statutory damages (15 U.S.C. § 1117(c)). Here, the Plaintiff has elected to recover statutory damages. D.E. 38 at 2. As discussed below, after considering the need for deterrence, the lack of evidence surrounding Defendants' profits, and the lost revenue of Plaintiff, the Court will award $160,240.00 in statutory damages.

Under the Lanham Act, Plaintiff may recover "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1)). In the case of a willful use of a counterfeit mark, the statutory maximum increases to $2,000,000 per mark per type of good. 15 U.S.C. § 1117(c)(2). For use to be "willful," a defendant must evince an "aura of indifference to plaintiff's rights" or a "deliberate and unnecessary duplicating of a plaintiff's mark...in a way that was calculated to appropriate or otherwise benefit from the good will the plaintiff had nurtured." *SecuraComm Consulting Inc. v. Securacom Inc.*, 166 F.3d 182, 187 (3rd Cir. 1999) (citations and internal marks omitted), *superseded by statute on other grounds as recognized by Banjo Buddies, Inc. v. Renosky*, 399 F.3d 182, 187 (3d Cir. 1999).

"In the absence of clear guidelines for setting a statutory damage award, courts have tended to use their wide discretion to compensate plaintiffs, as well as to deter and punish defendants, often borrowing from factors considered for statutory damages in copyright infringement." *Coach,*

*Inc. v. Bags & Accessories*, 2011 WL 1882403 at *6 (D.N.J. May 17, 2011) (quoting *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F.Supp.2d 567, 583-84 (E.D. Pa. 2002) (internal quotation marks omitted)). Statutory damages are meant to serve as a substitute for actual damages, and as such should "bear some relation to the actual damages suffered." *Id.* (quoting *Bly v. Banbury Books, Inc.*, 639 F.Supp. 983, 987 (E.D. Pa. 1986) (internal quotation marks omitted)).

To assess whether a statutory damage amount is appropriate, the Court will typically look to other judgements for guidance. *Coach, Inc. v. Ocean Point Gifts*, 2010 WL 2521444 at *5 (D.N.J. June 14, 2010). However, because there is little guidance within the district on appropriate damages in this context, this Court considers the factors used in the Second Circuit:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

*Platypus Wear, Inc. v. Bad Boy Club, Inc.*, 2009 WL 2147843 at *7 (D.N.J. July 15, 2009); *Fitzgerald Publ'g Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986).

In this case, there is scant evidence as to the Defendants' revenues. However, Plaintiff has provided its estimation of the Defendants' actual sales. D.E. 38. The Court notes that the absence of evidence is mostly a factor of Defendants' unwillingness to participate in these proceedings and not the result of Plaintiff's failure to pursue discovery. Plaintiff places this estimate at $478,500.00 in sales during the relevant period. D.E. 27 at 13. Plaintiff also claims that its own lost revenue was $16,240.00 in lost dues over the 58-month period. D.E. 27; D.E. 26-2 at ¶9. As discussed above, Defendants' conduct was willful, and thus the maximum award of $2,000,000 per counterfeit mark per type of good is available. Here, only one counterfeit mark on one type of

good was sold by the Defendants. D.E. 27 at 5. Therefore, the statutory damage must not be less than $2,000 nor more than $2,000,000.

This case presents a unique instance where the mark in question is not connected with the reputation of the goods but rather the organization supplying the marks. The certification provided by NeLMA does not guarantee the quality of the boxes or crates, but rather that the lumber has been treated and processed in accordance with the International Plant Protection guidelines. D.E. 27 at 10. This misrepresentation would be confusing not only to potential customers but also customs officials, shipping handlers, and anyone else in the chain of commerce. The transfer of the lumber by those who believe it to be treated properly into foreign environments can create a substantial risk of environmental damage through the spread of invasive pests in wood packaging materials (if the product was not in fact treated as indicated). *Id.* Thus, the Court finds the need for deterrence is significant.

Yet the Court does not accept Plaintiff's estimate of $478,500.00 in Sky NY's revenue as the appropriate basis for damages. First, the amount is not based on any hard evidence; it is an estimates made by the President of NeLMA. D.E. 26-2 at ¶9. Additionally, while a defendant's profits have a bearing on a damages calculation, it is normally used when the defendant uses a plaintiff's mark on counterfeit goods to trade on the good will that the plaintiff has accrued through the quality or character of the goods. *Coach, Inc.*, 2010 WL 2521444 at *1; *Rolex Watch U.S.A., Inc. v. Jones*, 2002 WL 596354 at *1-2 (S.D.N.Y. Apr. 17, 2002). In the cited cases, which refer to a Coach handbag or Rolex watch, the mark is itself *the* reason for buying the product. By comparison, here the mark represents a certification that the product can be used in international shipping. Further, Plaintiff is not in the business of making and selling crates, it is in the business of certifying lumber. While the use of Plaintiff's mark may have aided Defendant in generating

11

revenue, Plaintiff would not have (by its own estimates) made more than the $16,240.00 had Sky NY not improperly used the mark.

Considering the amounts lost by Plaintiff during the 58-month period, the willful and uncooperative conduct of Defendants, and the need for specific deterrence of Defendants and others in the industry, this court finds that a $160,240.00 statutory damage award is sufficient, representing a ten-fold increase over Plaintiff's actual losses. The Court notes that in cases of willful infringement, Congress has increased the maximum statutory damages by a multiple of ten, from $200,000 to $2,000,000. To further the intent of Congress to deter willful conduct, the court will apply the same multiplier here to the amount lost by Plaintiffs.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's motion for a default judgment as to Defendant Sky NY is **GRANTED**, but is **DENIED** as to Defendant Tong-IN. An appropriate Order accompanies this Opinion.

Dated: April 2, 2018

John Michael Vazquez, U.S.D.J.